**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-22856-ALTMAN**

**LUIS VILLAFUERTE CATELLON**,

     *Petitioner*,

*v.*

**SECRETARY, DEPT. OF HOMELAND SECURITY**, *et al.*,

     *Respondents.*

_____/

## <u>ORDER</u>

Our Petitioner, Luis Villafuerte Castellon, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his ongoing immigration detention by the Respondents. *See* Petition for Habeas Corpus (the "Petition") [ECF No. 1]. The Petition is fully briefed and ripe for adjudication. *See* Response in Opposition to the Petition (the "Response") [ECF No. 6]; Reply in Support of the Petition (the "Reply") [ECF No. 7]. After careful review, we **DENY** the Petition.

### BACKGROUND

Castellon is a Cuban citizen who was admitted to the United States on or about July 3, 1991. *See* Petition ¶¶ 18–19. In February 1996, Castellon engaged in a sexual relationship with a minor, which led to his conviction "of the offense of Lewd and Lascivious Act in violation of Florida Statute 800.04(3)." Response at 2. The Petitioner "was sentenced to 8 years' probation and 2 years community control." *Ibid*; *see also* Petition ¶ 20 ("In 1995, [Castellon] was involved in a consensual sexual liaison with a minor female. . . . [H]e was charged by information with lewd and lascivious activity on October 12, 1995."). After his criminal conviction, the Petitioner "was [ ] ordered removed on July 11, 2002." Petition ¶ 26. "On the same day, [the] Petitioner was taken into immigration custody." Response at 2.

"On October 18, 2002, Petitioner was placed on an Order of Supervision (OSUP) and released from immigration custody." *Ibid.* (citations omitted).

On January 5, 2026, the Petitioner's release was revoked under 8 C.F.R. § 241.4(l)(2), and he was "detained by ICE ERO based on his final order of removal." *Id.* at 3; *see also* Petition ¶ 27 ("On or about January 5, 2026, Petitioner was detained by ICE and has been held continuously ever since."). The Petitioner filed this Petition on March 23, 2026, alleging that his continued detention is unlawful because "[t]here is no significant likelihood that Petitioner will be removed to Cuba in the reasonably foreseeable future." Petition at 6.

## THE LAW

Section 2241 allows district courts to grant relief to petitioners who are held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This jurisdiction extends to petitioners challenging their detention under our immigration laws. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## ANALYSIS

The Petition asserts three counts, all of which are premised on the Respondents' alleged "indefinite" detention of Castellon, which he claims violates the Supreme Court's ruling in *Zadvydas*. *See* Petition ¶¶ 40–47; *see also* Reply at 2 ("[Castellon] challenges the legality and length of his detention based on procedural deficiencies and under a framework devised by the Supreme Court for district courts to apply." (citing *Zadvydas*, 533 U.S. at 682)).

### I.    Jurisdiction

As a threshold matter, the Respondents challenge our jurisdiction to hear Castellon's *Zadvydas* claim. *See* Response at 9 ("Petitioner is, in essence, asking this Court to prevent ICE from executing Petitioner's removal order by ordering the immediate release of Petitioner. This Court, however, lacks jurisdiction to grant such relief. . . . The Secretary of DHS's decision to execute a removal order

2

squarely falls within [Section 1252(g)'s] jurisdictional bar" (cleaned up)). They're wrong. As we've previously held, "[w]hile Section 1252(g) 'bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions.'" *Lezama Garcia v. Miami Field Off. Dir.*, 2026 WL 632351, at *4 (S.D. Fla. Mar. 6, 2026) (Altman, J.) (quoting *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006)). We're thus free to hear Castellon's claims regarding the length of his detention.[1]

**II.      *Zadvydas* Claim**

"After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (quoting 8 U.S.C. § 1231(a)(1)(A)). Once that "removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" *Id.* at 578–79 (quoting 8 U.S.C. § 1231(a)(6)). But "Section 1231(a)(6) does not expressly specify how long detention past the 90-day removal period may continue for those who fall within the four designated statutory categories." *Id.* at 579.

---

[1] We do, however, lack jurisdiction to grant Castellon's request that we "[o]rder Respondents to refrain from transferring Petitioner out of the jurisdiction of the Southern District of Florida during the pendency of these proceedings." Petition at 13. As other courts in our District (and across the country) have observed, "8 U.S.C. § 12529(a)(2)(B) and 8 U.S.C. § 1231(g)(1) strip the Court of jurisdiction 'to enjoin the government from transferring immigration detainees to other districts, as those decisions fall within the discretion of the Attorney General.[']" *Boulos v. Dir., U.S. DHS ICE ERO Miami Field Off.*, 2025 WL 4092609, at *2 (S.D. Fla. Dec. 11, 2025) (Bloom, J.) (quoting *Guerra-Castro v. Parra*, 2025 WL 1984300, at *2 (S.D. Fla. July 17, 2025) (Gayles, J.); *see also Calla-Collado v. Att'y Gen. of the U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) ("An alien is guaranteed the right to counsel and the right to present witnesses and evidence at his deportation proceedings. An alien, however, does not have the right to be detained where he believes his ability to obtain representation and present evidence would be most effective." (cleaned up)).

To avoid the "serious constitutional concerns" involved in "indefinite detention," the Supreme Court has "construe[d] the statute to contain an implicit 'reasonable time' limitation" of six months, "the application of which is subject to federal-court review." *Zadvydas*, 533 U.S. at 682. "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months." *Id.* at 701. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Ibid.* But "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Ibid.*; *see also ibid.* ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' . . . would have to shrink."). In conducting this inquiry, courts "must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to speak with one voice in immigration matters." *Id.* at 700 (quotation marks omitted).

In resolving *Zadvydas* claims, courts consider whether the government can show, with evidence, that removal remains reasonably foreseeable. That evidence can include the government's "contact" with a foreign country, whether the country "is accepting individuals removed from the United States," whether "flights are regularly being scheduled" to the country, and whether the country "routinely issues travel documents." *Lambert v. Garland*, 2023 WL 2016841, at *4 (S.D. Fla. Feb. 15, 2023) (Altman, J.) (quotation marks omitted); *see also, e.g.*, *Vandi v. Ripa*, 2022 WL 2709109, at *2 (S.D. Fla. June 3, 2022) (Ruiz, J.) ("Sierra Leone's government has provided travel documents to Petitioner and Petitioner is scheduled to board a flight to Sierra Leonne that will take place at the end of the month."); *Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015) ("[A]ll potential receiving countries . . . refused to accept the alien or there was no repatriation treaty.").

Notably, "[c]ourts in this Circuit have consistently held that, when a habeas petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future[.]" *Lambert*, 2023 WL 2016841, at *3 (quotation marks omitted); *see also Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("[N]on-cooperation is the only barrier to his removal."); *Linares v. DHS*, 598 F. App'x 885, 887 (11th Cir. 2015) ("[T]he government has attempted to repatriate him five times . . . and he admits that his obstructive actions, failure to cooperate, and frequent litigation are the only reasons he remains in the United States."); *Vaz*, 634 F. App'x at 782 ("Brazil has not refused to accept Petitioner. In fact, the Consulate has indicated that it cannot issue Petitioner a travel document unless he voluntarily signs for it." (citations omitted)); *Castaneda v. Perry*, 95 F.4th 750, 758 n.7 (4th Cir. 2024) (finding that the petitioner "has not shown that the delay in his withholding-only proceedings is directly attributable to anything other than ordinary litigation processes" (quotation marks omitted)); *Guo Xing Song v. U.S. Att'y Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("The six-month period is tolled, however, if the alien acts to prevent his removal."); *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009) ("Gozo interrupted the running of time under *Zadvydas* when he simultaneously challenged issues related to his removal order and his post-removal period detention." (cleaned up)).

Castellon has shown that he's been detained for more than six months. *See* Petition ¶ 9 ("Petitioner is a native and citizen of Cuba. Petitioner was taken into ICE custody on or about January 5, 2026 and has remained in ICE custody continuously since that date.").[2] But that satisfies only the first step of the *Zadvydas* test. As for the second step, Castellon must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Castellon claims that "[t]here is no significant likelihood that [he] will be removed to Cuba

---

[2] The Petition was premature when it was filed because Castellon had only been detained for 77 days. But in the interest of judicial economy—and because Castellon has now been detained for longer than 180 days—we'll reach the merits of his claim.

in the reasonably foreseeable future." Petition ¶ 29. Castellon says that "[he] departed Cuba in 1991 and has remained outside the country for more than three decades. Individuals who left during that period are not automatically accepted back by the Cuban government. Rather, repatriation requires affirmative authorization from Cuban authorities, which is discretionary and not routinely granted." *Ibid.* Here, unfortunately, Castellon misses the point. The Respondents aren't seeking to remove Castellon to Cuba—they plan to send him to Mexico. *See* Response at 3 ("On January 25, 2026, ICE ERO issued Petitioner another Notice of Removal to Mexico."). And Castellon's Petition is virtually silent as to his potential removal to *that* country, adding only that, "on or about February 2026, Petitioner was unsuccessfully attempted to be removed to Mexico." Petition ¶ 30. Castellon, in other words, has failed to give any "good reason to believe that there is no significant likelihood of removal [to Mexico] in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. His failure to satisfy the second *Zadvydas* step is fatal to his claim.

The Respondents, on the other hand, tell us that they've twice attempted to remove Castellon to Mexico but "were unable to because Petitioner became combative and aggressive." Response at 8; *see also* Declaration of Deportation Officer Deborah Lauciello [ECF No. 6-7] ¶ 17 ("On January 26, 2026, ICE ERO attempted to remove Petitioner to a safe third country but were unable to effectuate removal when Petitioner became combative and aggressive."). Castellon doesn't respond to this argument at all, *see generally* Reply, leaving us no choice but to credit the sworn declaration of Deportation Officer Lauciello and find that the Respondents only failed to remove Castellon to Mexico because he thwarted his own removal, *see* Response at 9 ("Even if Petitioner were able to satisfy the six-month period, his argument suffers from another defect—his own actions prevented his removal."). In cases like this one, we must deny the Petition. *See Lambert,* 2023 WL 2016841, at *3 ("Courts in this Circuit have consistently held that, when a habeas petitioner is responsible for

thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future[.]").[3]

<b>CONCLUSION</b>

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1.  The Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

2.  All pending deadlines are **TERMINATED**, and any pending motions are **DENIED as moot**. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on July 30, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

         Noticing INS Attorney
         Email: usafls-immigration@usdoj.gov

---

[3] Castellon argues that the Respondents haven't shown that "Mexico has agreed to accept Petitioner in the future, or that any removal is scheduled to occur on a concrete timeline." Reply at 5. But this argument betrays a misunderstanding of *Zadvydas*'s burden-shifting framework. The Respondents needn't come forward with evidence that removal is likely in the foreseeable future until Castellon provides us with good reason to believe that it's not. *See Zadvydas*, 533 U.S. at 701 ("After this 6–month period, *once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future*, the Government must respond with evidence sufficient to rebut that showing." (emphasis added)). Castellon has made no such showing here.